Michael R. Reese (SBN 206773)
mreese@reeserichman.com
Kim E. Richman
krichman@reeserichman.com
Belinda L. Williams
bwilliams@reeserichman.com
**REESE RICHMAN LLP**
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

Stephen Gardner
SGardner@cspinet.org
Seema Rattan
SRattan@cspinet.org
**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
5646 Milton Street, Suite 211
Dallas, Texas 75206
Telephone: (214) 827-2774
Facsimile: (214) 827-2787

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNIE LAM, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL MILLS, INC.,<br><br>Defendant. | Case No.11-cv-5056 JCS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Annie Lam ("Plaintiff"), by and through her undersigned counsel, alleges the following based upon her own personal knowledge and the investigation of her counsel.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a proposed class action against General Mills, Inc. ("General Mills" or "Defendant") for misleading consumers about the nutritional and health qualities of its fruit snacks, namely Fruit Roll-Ups® and Fruit by the Foot® as well as other similar products ("Fruit Snacks" or "Products").

2.      During the period October 15, 2005, to the present (the "Class Period"), Defendant engaged in a widespread marketing campaign to mislead consumers about the nutritional and health qualities of its Fruit Snacks.  Specifically, Defendant made misleading statements that its Products were nutritious, healthful to consume, and better than similar fruit snacks.

3.      In fact, Defendant's Fruit Snacks contained trans fat, added sugars, and artificial food dyes; lacked significant amounts of real, natural fruit; and had no dietary fiber.  Thus, although the Products were marketed as being healthful and nutritious for children and adults alike, selling these Fruit Snacks was little better than giving candy to children.

4.      By its deceits, Defendant was able to command a premium price by misleading consumers about the healthfulness of its Products and, thereby, distinguishing the Products from similar fruit snack products.  Defendant was motivated to mislead consumers for no other reason than to take away market share from competing products and increase its own profits.

5.      Defendant conveyed this message about the healthfulness of its Products through a significant marketing and advertising campaign.  For example, Defendant stated on the front packaging of each of its Fruit Products, as well as in marketing, the following: 1) FRUIT FLAVORED SNACKS; 2) NATURALLY FLAVORED; 3) GOOD SOURCE OF

1   VITAMIN C; 4) [LOW NUMBER] of CALORIES; 5) LOW FAT; and 6) GLUTEN FREE — all

2   conveying positive health benefits.

3       6.      Additionally, Defendant's packaging and marketing targets children with

4   various promotional gimmicks, for instance:  1) a "Win & Give" icon stating, "You could

5   win a laptop and give another one to a child in Africa"; 2) an "eat well-play hard-burn

6   energy" icon with web address "EatPlayBurn.com"; and 3) a "BOX TOP FOR

7   EDUCATION" icon stating, "EARN MORE CASH FOR YOUR SCHOOL AT BTFE.COM!"

8       7.      Unfortunately for consumers and their children, all of Defendant's claims of

9   healthfulness are false and misleading.  These claims are misleading since the Products fail

10  to properly disclose that they contain a highly unhealthful, non-nutritious additive known

11  as *partially hydrogenated oil.*  Partially hydrogenated oil is an artificial substance

12  containing "trans fats" (also known as "trans fatty acids"), which are known to cause a

13  number of health problems, including coronary disease, heart attacks, and death.

14      8.      The Dietary Guidelines for Americans, the government's basic nutrition

15  policy, states:  "Keep *trans* fatty acid consumption as low as possible, especially by limiting

16  foods that contain synthetic sources of trans fats, such as partially hydrogenated oils, and

17  by limiting other solid fats."

18      9.      In fact, the health problems associated with partially hydrogenated oil are so

19  widespread and debilitating that many doctors have compared the oil to poison and have

20  advised consumers to avoid any consumption of this oil.

21      10.     Defendant's numerous claims mislead consumers regarding the health

22  qualities of its Products.  These claims include that its Products are fruit flavored, naturally

23  flavored, a good source of Vitamin C, low in calories, low fat, and gluten free, along with

24  other promotional claims geared towards children.  Plaintiff brings this action to stop

25  Defendant's misleading practices.

26

27

28

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

11.     This court has jurisdiction over all causes of action asserted herein, pursuant to 28 U.S.C. § 1332(d), because the aggregate claims of the class exceed the sum or value of $5,000,000.00, and there is diversity of citizenship between proposed class members and Defendant.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) and (2). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false information regarding the quality of the Products, occurred within this district.

**PARTIES**

13.     Plaintiff Annie Lam ("Plaintiff") is a citizen of California because Plaintiff is domiciled in Daly City, California, and has no intention of changing her domicile.  During the Class Period, Plaintiff purchased Defendant's Products for herself and her children at a premium price from various grocery and retail stores near her neighborhood located in California.  Plaintiff viewed the misleading and deceptive statements contained on the packaging of the Products—*i.e.*, fruit flavored, naturally flavored, good source of Vitamin C, low in calories, low fat, and gluten free—as well as Defendant's widespread advertising and marketing of the Products that represented they were nutritious and healthful.  Based upon these misrepresentations, Plaintiff reached the conclusion that the Products were healthful and relied upon these representations in making her decision to purchase the Products at the premium price.  As described herein, Defendant's representations are misleading and deceptive because the Products are not healthful, as represented, because they contain trans fat, large amounts of added sugars, and potentially harmful artificial food dyes; lack significant amounts of real, natural fruit; and have virtually no dietary fiber.  Plaintiff suffered injury in that she would not have purchased the Products for herself and her children at a premium price had these misrepresentations not been made.

14.     Defendant General Mills, Inc. is a Fortune 500 Company primarily concerned with food products and the marketing of many well-known brands, such as Betty Crocker.

General Mills, Inc. is headquartered in Golden Valley, Minnesota. Defendant's brand portfolio includes more than 100 leading U.S. brands. Defendant states on its website: "We know we can enrich lives if we can help people enhance their own health and well-being through food. That's the goal—innovating to nourish lives." *See* General Mills Corporate Social Responsibility, www.nourishinglives.com/ (last visited Jul. 15, 2011). Defendant further states, with regard to its marketing and advertising, as follows: "As an industry leader, General Mills maintains high standards for responsible marketing, especially in advertising that reaches children." *See* Marketing and Advertising, www.generalmills.com/Responsibility/MarketingandAdvertising.aspx (last visited October 15, 2011).

## SUBSTANTIVE ALLEGATIONS

15.     The presence of partially hydrogenated oil in food is a major health concern for all Americans and has been cited as a leading cause of heart disease and death. For example, the Harvard School of Public Health reports that:

> A 1993 Harvard study strongly supported the hypothesis that intake of partially hydrogenated vegetables oils contributed to the risk of having a heart attack . . .   It lowers levels of high-density lipoprotein (HDL) particles, which scour blood vessels for bad cholesterol and truck it to the liver for disposal. It also promotes inflammation, an overactivity of the immune system that has been implicated in heart disease, stroke, diabetes, and other chronic conditions . . . .  This multiple-pronged attack on blood vessels translates into heart disease and death.

*See Shining the Spotlight on Trans Fats*, www.hsph.harvard.edu/nutritionsource/nutrition-news/transfats/ (last visited October 13, 2011).

16.     Defendant has engaged in a widespread marketing and advertising campaign to portray its Products as nutritious, healthful, and safe to eat. Defendant engaged in this misleading and deceptive campaign to charge a premium and take away market share from other similar products, such as Liberty Orchards Fruit Bites. For instance, Defendant's Products retail on average for $2.50, whereas a box of Liberty Orchards Fruit Bites sell for $1.00.

17.     Defendant's misleading and deceptive packaging all prominently state on the front of each of the Products the following: 1) FRUIT FLAVORED SNACKS; 2) NATUALLY FLAVORED; 3) GOOD SOURCE OF VITAMIN C; 4) [LOW NUMBER] of CALORIES; 5) LOW FAT; and 6) GLUTEN FREE.  A representative picture of the Products is included below:



In combination with these misleading claims made on its packaging, Defendant has conducted multi-million-dollar, widespread marketing and advertising campaigns to deceptively convey the message that its Products are nutritious and healthful.

18.     Defendant further advertises on the front of the packaging that the Products are "naturally flavored." However, on the side of the Products, in the ingredients, Defendant acknowledges that the Products contain "artificial colors" as well as other substances that are non-natural, including maltodextrin and corn syrup.

19.     Defendant also targets children with various promotional gimmicks. For instance, the promotion "Win & Give" — "You could win a laptop and give another one to a child in Africa." — contains photographs of children, one from the United States and the

other from Africa.  The "eat well-play hard-burn energy" promotion contains an icon with the web address "EatPlayBurn.com" that directs consumers to a website that contains online games and activities for children.  The "BOX TOP FOR EDUCATION" promotion contains the icon, along with the statement and web address "EARN MORE CASH FOR YOUR SCHOOL AT BTFE.COM!"   All three promotions appear on various boxes of Defendant's Fruit Snacks and are all clearly geared toward children.

20.    Unfortunately for consumers and their children, the Products are not made using healthful ingredients, but rather include dangerous, non-nutritious, unhealthy partially hydrogenated oil, as well as sugars and food dyes.  Defendant's Fruit Roll-Ups product, for instance, contains 1.5g of trans fat per 100g of product.  If a child were to eat just three roll (*i.e.* less than a third of the typical box that contains 10 Fruit Roll-Ups), he would consume over half a gram of trans fat – a dangerous additive that doctors conclude is unsafe at any level.

21.    Statements on the front of Defendant's packaging that convey healthfulness are deceptive and misleading when the actual ingredients of the Products include dangerous partially hydrogenated oil, large amounts of added sugars, and artificial food dyes; have no significant amounts of real fruit; and have no dietary fiber.

22.    Furthermore, the side of the packaging of each of Defendant's Products states above the nutrition panel:  "MADE WITH REAL FRUIT."  This statement in bold, colorful print further conveys healthfulness, but it incorrectly describes the ingredients, which include partially hydrogenated oil, sugars in quantities amounting to approximately half of each serving,[1] and "pears from concentrate" rather than the fruit indicated by the name of the Product and cleverly simulated through the use of flavorings and synthetic color additives.

---

[1] Fruit by the Foot Strawberry contains 9 grams sugar per 21 grams, Fruit Roll-Ups Strawberry contains 7 grams sugar per 14 grams, Fruit Tropical Flavors contain 12 grams sugar per 25 grams.

23.     For example, the ingredients for Fruit Roll-Ups **Strawberry** are:

**Pears** from Concentrate, **Corn Syrup**, **Dried Corn Syrup**, **Sugar**, **Partially Hydrogenated Cottonseed Oil**, Citric Acid, Acetylated Monoglycerides, Fruit Pectin, Dextrose, Malic Acid, Vitamin C (ascorbic acid), Natural Flavor, Color (**red 40, yellows 5 & 6, blue 1**).

Amid the sugars, trans fats, artificial colors, and other unfamiliar ingredients, it is hard for a reasonable consumer to tell that the Fruit Roll-Ups **Strawberry** product <u>**does not actually contain** any strawberries.</u>

24.     Moreover, Defendant's Fruit Roll-Ups have traditionally been promoted as a healthful snack alternative for parents to purchase for their kids.  Defendant reinforces all of its Fruits Snacks as healthful snack alternatives for parents to purchase for their kids through advertising on its website, listing the qualities of the Fruit Snacks that convey healthfulness and implying that this quality "Makes Mom Smile Too."  *See* Betty Crocker Fruit Snacks, www.bettycrocker.com/products/fruit-snacks (last visited Jul. 15, 2011). Defendant further provides "The Red Spoon Promise" on the packaging of its Products that states as follows:   "The Red Spoon is my promise of great taste, quality and convenience.  This is a product you and your family will enjoy.  I guarantee it."  Defendant is conveying an overall message of a healthful snack product to parents when, in fact, the Products contain dangerous, non-nutritious, unhealthy partially hydrogenated oil, large amounts of sugar, and potentially harmful artificial food dyes.

## CLASS ALLEGATIONS

25.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons in the United States who purchased Defendant's Fruit Snacks and other similar products during the Class Period (the "Class"). Excluded from the Class are officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, and its legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest.

26.     At this time, Plaintiff does not know the exact number of Class members, but — given the nature of the claims and the number of retail stores selling Defendant's Products nationally — Plaintiff believes that Class members are so numerous that joinder of all members of the Class is impracticable.

27.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a.      Whether Defendant labeled, marketed, advertised, and/or sold the Products to Plaintiff and those similarly situated using false, misleading, and/or deceptive statements or representations, including statements or representations concerning the nutritional and health qualities of its Products;

    b.      Whether Defendant omitted and/or misrepresented material facts in connection with the sales of its Products;

    c.      Whether Defendant participated in and pursued the common course of conduct complained of herein; and

    d.      Whether Defendant's labeling, marketing, advertising, and/or selling of its Products as healthful and nutritious constitutes an unfair or deceptive consumer sales practice.

28.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased Defendant's Products at a premium in a typical consumer setting and sustained damages from Defendant's wrongful conduct.

CLASS ACTION COMPLAINT

29.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions.  Plaintiff has no interests that conflict with those of the Class.

30.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

31.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

32.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.   For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interests of the Class even though certain Class members might not be parties to such actions.

33.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.  As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Minnesota Uniform Deceptive Trade Practices Act,**

**In Violation of Minnesota Statutes §§ 325D.43,** *et seq.*

34.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

35.     This claim is brought against Defendant on behalf of the nationwide Class, pursuant to Minnesota's Uniform Deceptive Trade Practices Act ("UDTPA"), Minnesota Statutes § 325D.43, *et seq.*

36.     Defendant's conduct violated and continues to violate the UDTPA in at least the following respects:

     a.     In violation of § 325D.44(5), Defendant represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

     b.     In violation of § 325D.44(7), Defendant represented that goods or services are of a particular standard, quality, or grade . . . [when] they are of another.

37.     Defendant engaged in these unfair and deceptive acts and practices with the intent that they result, and which did result, in the sale of food products to Plaintiff and Class members.  As a result of Defendant's practices, Plaintiff and Class members have suffered damages as described above.

38.     The fact that consumers purchased the food Products is material in that a reasonable person would have considered the alleged healthfulness of the Fruit Snacks an important factor that would have meaningfully affected his or her decision regarding whether to purchase the Fruit Snacks instead of cheaper competing food products.

39.     Defendant's representations injured Plaintiff and Class members in that Plaintiff and Class members paid a premium for Fruit Snacks portrayed as healthful and nutritious but that, in actuality, contain dangerous, unhealthy, non-nutritional partially hydrogenated oil.

40.     As a result of Defendant's acts and practices as alleged in this Complaint, Plaintiff, on behalf of herself and all Class members, seeks actual damages, in an amount to be proven at trial, pursuant to Minnesota Statutes § 8.31; an order enjoining Defendant from continuing to engage in unlawful, unfair, or fraudulent business practices; and any other act prohibited by law.   Plaintiff, on behalf of herself and all Class members, additionally seeks costs and reasonable attorney's fees pursuant to Minnesota Statutes § 8.31.

## SECOND CAUSE OF ACTION

### Unfair and Deceptive Acts and Practices,

### In Violation of the California Consumers Legal Remedies Act § 1750, *et seq.*

41.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

42.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Cod e § 1750, *et seq.* (the "CLRA").

43.     Plaintiff and members of the Class are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Fruit Snacks for personal, family, or household purposes.

44.     Plaintiff, members of the Class, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

45.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

46.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff and the Class certain health qualities of its Products.

47.     As a result of engaging in such conduct, Defendant has violated California Civil Code §§ 1770(a)(5), (a)(7), and (a)(9).

48.     Pursuant to California Civil Code §§ 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order requiring Defendant to remove language on Defendant's packaging and advertising representing its Fruit Snacks as healthful and nutritious.

49.     Plaintiff and members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

50.     The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff and members of the Class.

51.     CLRA §1782 NOTICE.  On December 9, 2011, a CLRA demand letter was sent to Defendant that provided notice of Defendant's violation of the CLRA and demanded that within thirty (30) days from that date, Defendant correct, repair, replace or other rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  The letter also stated that if Defendant refused to do so, the complaint would be amended to seek damages in accordance with the CLRA. Defendant has failed to comply with the letter.  Accordingly, pursuant to California Civil Code §1780(a)(3), Plaintiff, on behalf of herself and all other members of the Class, seeks compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

### THIRD CAUSE OF ACTION

### Unlawful Business Acts and Practices,

### In Violation of California Business and Professions Code § 17200, *et seq.*

52.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

53.     Such acts of Defendant, as described above, and each of them constitute unlawful business acts and practices.

54.     In this regard, Defendant's manufacturing, marketing, advertising, packaging, labeling, distributing, and selling of its Fruit Snacks violates California's Sherman Food, Drug and Cosmetics Law, Cal. Health & Saf. Code § 109875, *et seq.* (the "Sherman Law").

55. In relevant part, the Sherman Law declares that food is misbranded if its labeling is false or misleading in any particular way and further provides that it is unlawful for any person to misbrand any food. Cal. Health & Saf. Code §§ 110660, 110765.

56. The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing." Cal. Health & Saf. Code § 109995. Defendant is a corporation and, therefore, a "person" within the meaning of the Sherman Law.

57. The business practices alleged above are unlawful under the California Consumers Legal Remedy Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), which forbids deceptive advertising.

58. The business practices alleged above are unlawful under California Business and Professions Code § 17200, *et seq.* by virtue of violating § 17500, *et seq.*, which forbids untrue advertising and misleading advertising.

59. As a result of the business practices described above, Plaintiff and the Class, pursuant to California Business and Professions Code § 17203, are entitled to an order enjoining such future conduct on the part of Defendant and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for its Fruit Snacks as a result of the wrongful conduct of Defendant.

60. The above-described unlawful business acts and practices of Defendant present a threat and reasonable likelihood of deception to Plaintiff and members of the Class in that Defendant has systematically perpetrated and continues to perpetrate such acts or practices upon members of the Class by means of its misleading manufacturing, marketing, advertising, packaging, labeling, distributing, and selling of its Fruit Snacks.

61. THEREFORE, Plaintiff prays for relief as set forth below.

**FOURTH CAUSE OF ACTION**

**Fraudulent Business Acts and Practices,**

**In Violation of California Business and Professions Code § 17200,** *et seq.*

62.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

63.     Such acts of Defendant as described above constitute fraudulent business practices under California Business and Professions Code § 17200, *et seq.*

64.     As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of its Fruit Snacks is likely to deceive reasonable California consumers.   Indeed, Plaintiff and other members of the Class were unquestionably deceived regarding the characteristics of Defendant's Products, as Defendant's marketing, advertising, packaging, and labeling of its Fruit Snacks misrepresents and/or omits the true nutritional content and levels of trans fat and other unhealthy ingredients in the Products.  Defendant's portrayal of its Products as healthful and nutritious is misleading and deceptive because the Products contain dangerous, unhealthy, non-nutritional partially hydrogenated oil.

65.     This fraud and deception caused Plaintiff and members of the Class to purchase more of Defendant's Fruit Snacks than they would have or to pay more than they would have for Defendant's Fruit Snacks had they known the statements on the front of Defendant's Products conveying healthfulness are contrary to the actual ingredients of the Products, which include dangerous partially hydrogenated oil.

66.     As a result of the business acts and practices described above, Plaintiff and the Class, pursuant to California Business and Professions Code § 17203, are entitled to an order enjoining such future conduct on the part of Defendant and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for Defendant's Fruit Snacks as a result of the wrongful conduct of Defendant.

**FIFTH CAUSE OF ACTION**

**Misleading and Deceptive Advertising,**

**In Violation of California Business and Professions Code § 17500,** *et seq.*

67.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

68.     Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendant.

69.     At all material times, Defendant engaged in a scheme of offering its Products for sale to Plaintiff and other members of the Class by way of, *inter alia*, commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials.   Defendant's portrayal of its Products as healthful and nutritious is misleading and deceptive because the Products contain dangerous, unhealthy, non-nutritional partially hydrogenated oil.  Said advertisements and inducements were made within the State of California and come within the definition of advertising as contained in Business and Professions Code § 17500, *et seq.* in that such promotional materials were intended as inducements to purchase Defendant's Fruit Snacks and are statements disseminated by Defendant to Plaintiff and the Class and were intended to reach members of the Class.   Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive.

70.     In furtherance of said plan and scheme, Defendant has prepared and distributed within the State of California – via commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials – statements that misleadingly and deceptively represent the Products as healthful and nutritional.  Consumers, including Plaintiff, necessarily and reasonably relied on these materials concerning Defendant's Fruit Snacks.  Consumers, including Plaintiff and the Class members, were among the intended targets of such representations.

71.     The above acts of Defendant, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiff and members of the Class, were and are likely to deceive reasonable consumers, including Plaintiff and other members of the Class, by obfuscating the dangerous, unhealthy, non-nutritional partially hydrogenated oil contained in the Products, all in violation of the "misleading prong" of California Business and Professions Code § 17500.

72.     As a result of the above violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the other members of the Class.  Plaintiff and the Class, pursuant to California Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore to any person in interest any money paid for its Fruit Snacks as a result of the wrongful conduct of Defendant.

## SIXTH CAUSE OF ACTION

### Breach of Express Warranty

73.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

74.     Defendant provided Plaintiff and other members of the Class with written express warranties, including, but not limited to, warranties that its Fruit Snacks were healthful and had particular healthful characteristics as set forth above.

75.     Defendant breached these warranties, causing damage to Plaintiff and other members of the Class, who overpaid for Defendant's Fruit Snacks, which were not healthful in that they contained dangerous, unhealthy, non-nutritional partially hydrogenated oil and other ingredients harmful to one's health that did not otherwise conform to Defendant's warranties.

76.     As a proximate result of the breach of warranties by Defendant, Plaintiff and Class members have suffered damages in an amount to be determined at trial in that,

among other things, they purchased and paid a premium for Products that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendant, and they were deprived of the benefit of their bargain and spent money on Products that did not have any value or had less value than warranted or Products that they would not have purchased at a premium and used had they known the true facts about the Products.

## SEVENTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

77.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

78.     Plaintiff and other Class members purchased Defendant's Products, which were promoted, marketed, advertised, packaged, and labeled as healthful and as having particular healthful characteristics as set forth above.  Pursuant to these sales, Defendant impliedly warranted that its Fruit Snacks would be merchantable and fit for the ordinary purposes for which such goods are used and conform to the promises or affirmations of fact made in the Products' promotions, marketing, advertising, packaging, and labels.  As a result, Plaintiff and other Class members relied on Defendant's representations that its Fruit Snacks were healthful and had particular healthful characteristics as set forth above, and, at or about that time, Defendant sold its Products to Plaintiff and other Class members.  By Defendant's representations regarding the reputable nature of its companies and related entities, and by its promotion, marketing, advertising, packaging, and labeling of its Fruit Snacks, Defendant warranted that its Products are healthful and have particular healthful characteristics as set forth above.   Plaintiff and Class members bought Defendant's Fruit Snacks, relying on its representations that its Products were healthful and have particular healthful characteristics when, in fact, they are not healthful in that they contain dangerous, unhealthy, non-nutritional partially hydrogenated oil, added sugars, and artificial food dyes; lack significant amounts of real, natural fruit; and have no dietary fiber, and, thus, do not otherwise conform to Defendant's warranties.

79.     Defendant breached the warranty implied at the time of sale in that Plaintiff and Class members did not receive goods that were healthful or that have the healthful characteristics represented and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled, or sold.

80.     As a proximate result of this breach of warranty by Defendant, Plaintiff and the Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid a premium for Fruit Snacks that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendant, and they were deprived of the benefit of their bargain and spent money on Products that did not have any value or have less value than warranted or Products that they would not have purchased at a premium and used had they known the true facts about them.

## EIGHTH CAUSE OF ACTION

### Unjust Enrichment

81.     Plaintiff realleges and incorporates the above paragraphs of this class action Complaint as if set forth herein.

82.     As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of its Fruit Snacks, Defendant was enriched, at the expense of Plaintiff, and all others similarly situated, through the payment of the purchase price for Defendant's Products.

83.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff the members of the Class in light of the fact that the Fruit Snacks purchased by Plaintiff and the members of the Class were not what Defendant purported them to be.  Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the members of the Class for the monies paid to Defendant for such Products.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiff demands judgment as follows:

A. For an order certifying the proposed Class herein under Federal Rule of Civil Procedure 23(a) and (b)(3); appointing Plaintiff as representatives of the class; and appointing her undersigned counsel as class counsel;

B. For a declaration that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C. For an award of restitution pursuant to California Business & Professional Code §§ 17203, 17535;

D. For an award of disgorgement pursuant to California Business & Professional Code §§ 17203, 17535;

E. For an order enjoining Defendant's unlawful and deceptive acts and practices pursuant to California Business & Professional Code §§ 17203, 17535.

F. For injunctive relief, damages and restitution pursuant to Cal. Civil Code § 1780;

G. Monetary damages, including, but not limited to any compensatory, incidental, or consequential damages in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law with respect to the common law claims alleged;

H. Statutory damages in the maximum amount provided by law;

I. Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

J. For an order awarding Plaintiff and the Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

K. For any further relief that the Court may deem appropriate.

CLASS ACTION COMPLAINT

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby demands a trial by jury.

Dated: January 27, 2012                    Respectfully submitted,

**REESE RICHMAN LLP**

By:  <u>*/s/ Michael R. Reese*</u>
    Michael R. Reese (SBN 206773)
    Kim E. Richman
    Belinda L. Williams
    875 Avenue of the Americas, 18th Floor
    New York, New York  10001

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
Stephen Gardner
Seema Rattan
5646 Milton Street, Suite 211
Dallas, Texas 75206
Telephone: (214) 827-2774
Facsimile: (214) 827-2787

*Attorneys for Plaintiff and the Proposed Class*