IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNIE LAM, on behalf of herself, and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>GENERAL MILLS, INC.,<br><br>    Defendant. | Case No. 11-5056-SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S <u>MOTION TO DISMISS</u> |

## I. INTRODUCTION

Plaintiff Annie Lam ("Lam") brings this putative class action against Defendant General Mills, Inc. ("General Mills") for allegedly misleading consumers about the nutritional qualities of its fruit snacks, specifically Fruit Roll-Ups, Fruit by the Foot, and other, unidentified "similar products." ECF No. 27 ("FAC") ¶ 44. General Mills now moves to dismiss the action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 33 ("MTD"). The motion is fully briefed. ECF Nos. 44 ("Opp'n"), 45 ("Reply"). Having reviewed the papers, the Court finds the matter suitable for resolution without oral argument. As detailed below, the Court GRANTS in part and DENIES in part General Mills's motion to dismiss.

///

## II. BACKGROUND

As it must on a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded facts in Lam's First Amended Complaint ("FAC"), the operative pleading, as true.  General Mills is a Fortune 500 company primarily concerned with food products and the marketing of many well-known brands, such as Betty Crocker.  FAC ¶ 14.  The General Mills portfolio includes more than one hundred products.  Id.  Of these products, Lam targets "Fruit Roll-Ups and Fruit by the Foot as well as other similar products" (the "Fruit Snacks").  Id. ¶ 1.  The FAC does not specifically identify what these "other similar products" might be.

The Court takes judicial notice of the packaging of Fruit Roll-Ups and Fruit by the Foot, examples of which were filed with the Court by General Mills.  Mand Decl. Ex. A, B.[1]  The front panel of the Fruit Roll-Ups and Fruit by the Foot packaging contains a fanciful depiction of the products, which resemble fruit leather, along with a statement identifying the product as a "fruit flavored snack" and "strawberry natural flavored."  Id.  A box in the bottom right corner of the front panel states the "calories per serving," and describes the products as "a good source of vitamin C," "low fat," and "gluten free."  Id.  The side panel contains the label "made with real fruit," along with a nutrition facts box which lists the products' nutritional content and ingredients in much smaller type.  Id.  The ingredients of strawberry-flavored Fruit

---

[1] Benjamin Mand ("Mand"), the Marketing Manager for General Mills Fruit Flavored Snacks, filed a declaration in support of General Mills's motion, attaching pictures of the Fruit Snacks' packaging. ECF No. 35 ("Mand Decl.").

2

Roll-Ups, listed in descending order based on the amount of the particular ingredient contained in the product, are:

> Pears from Concentrate, Corn Syrup, Dried Corn Syrup, Sugar, Partially Hydrogenated Cottonseed Oil, Citric Acid, Acetylated Monoglycerides, Fruit Pectin, Dextrose, Malic Acid, Vitamin C (ascorbic acid), Natural Flavor, Color (red 40, yellows 5 & 6, blue 1).

Id. Strawberry-flavored Fruit by the Foot contains almost identical ingredients. Id.

Lam, who purchased the Fruit Snacks for herself and her children, alleges that the packaging misleads consumers into believing that the Fruit Snacks are healthful. FAC ¶¶ 7, 13. Lam alleges that General Mills fails to properly disclose that the Fruit Snacks contain partially hydrogenated oil, an artificial substance containing "trans fats" which has been known to cause coronary disease, heart attacks, and death. Id. ¶ 7. Lam also alleges that the Fruit Snacks contain large amounts of added sugars; contain artificial food dyes; have no significant amounts of real fruit; and have no dietary fiber. Id. ¶ 21. Lam alleges that the statement "made with real fruit" incorrectly describes the ingredients, which include "pears from concentrate," rather than the fruit indicated by the name of the product. Id. ¶ 22. For example, strawberry-flavored Fruit Roll-Ups contain no strawberries. Id. ¶¶ 22-23. Lam also takes aim at the labels: "fruit flavored snacks," "naturally flavored," and "gluten free."[2] Id. ¶ 17.

---

[2] In the FAC, Lam also targets the statements "good source of Vitamin C," "[low number] of calories," and "low fat," id. ¶ 17; however, she withdraws these claims in her opposition brief, Opp'n at 13.

Lam's FAC asserts claims for: (1) unfair and deceptive acts and practices in violation of Section 1750 of the California Consumer Legal Remedies Act ("CLRA"); (2) unlawful business acts and practices in violation of the California Unfair Competition Law ("UCL"); (3) fraudulent business acts and practices in violation of the California UCL; (4) misleading and deceptive practices in violation of California Business and Professions Code § 17500 et seq., aka California's False Advertising Law ("FAL"); (5) breach of express warranty; (6) breach of implied warranty of merchantability; and (7) unjust enrichment.[3] Id. ¶¶ 34-83. Among other things, Lam seeks restitution, disgorgement, monetary damages, and an order enjoining General Mills's allegedly unlawful and deceptive acts and practices.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint

---

[3] The FAC also asserts a claim for violation of the Minnesota Uniform Deceptive Practices Act, FAC ¶¶ 34-40, but this claim has been withdrawn, Opp'n at 19.

4

is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 663. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).

**IV. DISCUSSION**

    **A. Definition of the Fruit Snacks**

Lam's claims are predicated on allegedly false and misleading statements that appear on the packaging of the Fruit Snacks, which are defined as "Fruit Roll-Ups and Fruit by the Foot as well as other similar products." FAC ¶ 1. It is entirely unclear what these "other similar products" are. General Mills's "brand portfolio includes more than 100 leading U.S. brands." Id. ¶ 14. The company should not have to guess at which of these other brands are the subject of this suit. Accordingly, the Court DISMISSES the FAC WITH LEAVE TO AMEND to the extent that it is predicated on statements made concerning "other similar products." Plaintiff may amend the FAC to specifically identify the particular General Mills products that she intends to target.

    **B. NLEA Preemption**

General Mills argues that Lam's claims are preempted by the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343-1,

5

to the extent they are predicated on the "fruit flavored" and "naturally flavored" labels which appear on the Fruit Snacks' packaging. MTD at 6. Lam responds that her claims are not preempted because she is seeking to enforce federal regulations prohibiting false and misleading statements. Opp'n at 6.

Understanding the United States Food and Drug Administration's ("FDA") regulatory scheme is central to addressing the parties' dispute. The Federal Food, Drug, and Cosmetic Act ("FDCA") vests the FDA with the authority to "protect the public health by ensuring that . . . foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). Among other things, the FDCA requires proper labeling of foods containing artificial flavoring. See 21 U.S.C. § 343(k). Pursuant to this authority, the FDA has promulgated a comprehensive set of regulations pertaining to labeling requirements. See 21 C.F.R. § 101.1 et seq.

In 1990, Congress amended the FDCA by enacting the NLEA. The NLEA was intended to "establish uniform national standards for the nutritional claims and the required nutrient information displayed on food labels." 1990 U.S.C.C.A.N. 3336, 3342. The NLEA also amended the FDCA by adding a preemption provision, codified at 21 U.S.C. § 343-1. This provision expressly preempts state laws addressing certain subjects that are "not identical to" various standards set forth by the FDCA, including the labeling requirements set forth in 21 U.S.C. § 343(k). 21 U.S.C. § 343-1(a)(3). Under FDA regulations, the term "not identical to . . . means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition of

6

labeling" that are "not imposed or contained in the applicable provision[s]." 21 C.F.R. § 100.1(c)(4).

General Mills contends that Lam's claims are preempted because statements that the Fruit Snacks are "fruit flavored" and "naturally flavored" are expressly permitted by FDA regulations promulgated under 21 U.S.C. § 343(k). MTD at 8. General Mills specifically points to 21 C.F.R § 101.22(i), which provides, in relevant part:

> If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:
>
> . . .
>
> (i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".

Thus, the regulation allows a producer to label a product as "natural strawberry flavored," even if that product contains no strawberries. While the regulation's logic is troubling, the Court is bound to apply it.

1    Lam argues that her claims are not preempted because she is
2 seeking to enforce the regulatory scheme. Lam points to the FDCA,
3 which provides that a food is misbranded "[i]f it bears or contains
4 any artificial flavoring, artificial coloring, or chemical
5 preservative, unless it bears labeling stating that fact." Opp'n
6 at 6 (citing 21 U.S.C. § 343(k)). Lam also argues that the "fruit
7 flavored" and "naturally flavored" labels are false and misleading
8 because the Fruit Snacks are flavored with "unnatural, non-fruit
9 ingredients." Id.
10   Lam's arguments are unavailing. The crux of the FAC is that
11 the Fruit Snacks' labeling is deceptive because the products'
12 ingredients, not their flavors, are unnatural. See, e.g., FAC ¶¶
13 7, 23. However, under 21 C.F.R § 1022(i), a product may be labeled
14 as "fruit flavored" or "naturally flavored," even if it does not
15 contain fruit or natural ingredients. So long as that product
16 "contains natural flavor" which is "derived from" the
17 "characterizing food ingredient," it will not run afoul of the
18 regulation. If Lam means to assert that the Fruit Snacks violate
19 21 C.F.R. § 1022(i) or 21 U.S.C. § 343(k) because their flavors are
20 artificial, then she must allege as much in her complaint. She has
21 not. Accordingly, her claims concerning the flavoring labels are
22 preempted by the FDCA.[4]
23   Lam points to a number of cases concerning the use of the
24 labels "natural" and "all natural" to describe a product's

---

[4] In her opposition brief, Lam argues that the Fruit Snacks are flavored with "corn syrup, maltodextrin, and partially hydrogenated oil." Opp'n at 6. It is unclear whether this list is exhaustive. In any event, the FAC does not specifically allege that the Fruit Snacks are artificially flavored, and Rule 8 requires that Lam set forth her allegations in the pleadings, not her briefing.

ingredients. Opp'n at 7-10.[5] These cases are inapposite since they deal with the labeling of a product's ingredients, not the labeling of its flavors. Here, the labeling challenged by Lam -- which is related to the Fruit Snacks flavor -- is expressly permitted by FDA regulations. This was not the case in the authority relied upon by Lam. See Holk, 575 F.3d at 340 ("[T]he FDA declined to adopt a formal definition of the term 'natural' . . . '[b]ecause of resource limitations and other agency priorities'"); Hitt, 2009 WL 449190, at *4 (same); Lockwood, 597 F. Supp. 2d at 1033-34 (same).

For these reasons, the Court finds that Lam's claims are preempted to the extent they are predicated on the "naturally flavored" and "fruit flavored" labels.

### C. Lam's UCL, CLRA, and FAL Claims

The Court next addresses whether Lam's allegations regarding the labels "gluten free" and "made with real fruit" can support a claim under the UCL, CLRA, or FAL. The UCL prohibits any "unlawful, unfair[,] or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a). The FAL makes it unlawful to induce the public to enter into any obligation through the dissemination of "untrue or misleading" statements. Cal. Bus. & Prof. Code § 17500. In order to state a claim under the UCL, CLRA, or FAL, Lam must allege that the Fruit Snacks' labels are likely to deceive a reasonable

---

[5] Citing Holk v. Snapple Beverage Corp., 575 F.3d 329 (3rd Cir. 2009); Hitt v. Arizona Beverage Co., No. 08 CV 809 WQH, 2009 WL 449190 (S.D. Cal. Feb. 4, 2009); Lockwood v. Conagra Foods, Inc., 597 F. Supp. 2d 1028 (N.D. Cal. 2009).

9

consumer.  See Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995).  "[T]hese laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'"  Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (Cal. 2002) (quoting Leoni v. State Bar, 39 Cal. 3d 609, 626 (Cal. 1985)).  "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer."  Williams v. Gerber Prods. Co., 552, F.3d 934, 938 (9th Cir. 2008).

    The Court finds that the statement "gluten free" cannot support Plaintiff's claims under the UCL, CLRA, or FAL.  The statement is objectively true and communicates nothing more than the absence of gluten in the product -- a message used to convey the suitability of the Fruit Snacks to consumers with celiac disease and others who may wish to avoid gluten.  A reasonable consumer is unlikely to interpret the statement "gluten free" to mean that the Fruit Snacks contain no partially hydrogenated oils, low amounts of sugar or corn-syrup, or that the Fruit Snacks are otherwise healthful.

    The Court reaches a different conclusion with respect to the statement "made with real fruit."  Lam alleges that the statement "incorrectly describes the ingredients, which include partially hydrogenated oil, sugars in quantities amounting to approximately half of each serving, and 'pears from concentrate' rather than the fruit indicated by the name of the Product."  FAC ¶ 22.  Lam also argues that the challenged statements, along with the depiction of imitation fruit leather on the packaging, are likely to deceive

10

consumers into thinking the Fruit Snacks are healthful, natural, pressed-and-dried fruit products, when, in fact, they are an amalgamation of artificial, non-fruit ingredients. Opp'n at 15. General Mills argues that the statement "made with real fruit" is objectively true and that a reasonable consumer would not interpret the statement to mean that certain fruits were present in a particular quantity or that a specific fruit was present in the product. MTD at 16-17.

The Court agrees with Lam. A reasonable consumer might make certain assumptions about the type and quantity of fruit in the Fruit Snacks based on the statement "made with real fruit," along with other statements prominently featured on the products' packaging. For example, the statement "made with real fruit" appears in large and colorful letters on the side panel of the packaging of strawberry Fruit Roll-Ups. Additionally, the word "strawberry" appears in large letters on the front, back, top, and bottom panels. Taken together, these statements might lead a reasonable consumer to believe that product is made with real strawberries, not pears from concentrate. The names "Fruit Roll-Ups" and "Fruit by the Foot," along with the fanciful depiction of the products, which resemble fruit leather, may lead to further confusion about the Fruit Snacks' ingredients. After seeing these prominent aspects of the packaging, a reasonable consumer might be surprised to learn that a substantial portion of each serving of the Fruit Snacks consists of partially hydrogenated oil and sugars. It is true that General Mills lists the ingredients of the Fruit Snacks in small print on the bottom of the side panel. However, at the pleading stage, the Court cannot conclude that a reasonable

consumer should be expected to look beyond "made with real fruit" in order to discover the truth in the small print.

The Court's conclusion is supported by the Ninth Circuit's opinion in Gerber. In that case, Gerber had stated that its fruit juice snacks for toddlers were made with "fruit juice and other all natural ingredients." Gerber, 552 F.3d at 939. The Ninth Circuit found that these statements "could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false." Id. The products' packaging also juxtaposed the words "Fruit Juice" with images of fruits such as oranges, peaches, strawberries, and cherries, even though the product contained no fruit juice from any of the fruits pictured. Id. at 936. The Ninth Circuit rejected the notion that a reasonable consumer would not be deceived by such labeling because the packaging specifically identified the products' ingredients. Id. at 939. The court explained: "We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." Id. Likewise, here, the Fruit Snacks' ingredients list cannot be used to correct the message that reasonable consumers may take from the rest of the packaging: that the Fruit Snacks are made with a particular type and quantity of fruit.[6]

---

[6] General Mills argues that Gerber is distinguishable since the case also involved nutrition claims that are not present here. MTD at 18-19. Specifically, the Ninth Circuit noted that "the claim that Snacks is 'just one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy' adds to the potential deception." 552 F.3d at 939. While there is no indication that General Mills has expressly represented that the Fruit Snacks are "nutritious," that is hardly dispositive. As noted above, Gerber involved a number of other potentially deceptive statements.

12

General Mills relies on two district court opinions decided before Gerber, which dismissed UCL, CLRA, and FAL claims concerning the labeling of food and beverage products. See MTD at 16-17 (citing McKinniss v. Sunny Delight Beverages Co., CV0702034-RGKJCX ("Sunny Delight"), 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007); McKinniss v. Gen. Mills, Inc., CV 07-2521GAFFMOX ("McKinnis"), 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007)). In both cases, the courts held that a reasonable consumer should be expected to peruse the FDA-mandated ingredients list to determine the true contents of a product. See Sunny Delight, 2007 WL 4766525, at *4; McKinniss, 2007 WL 4762172, at *3. The Court declines to follow these opinions to the extent that they are inconsistent with Gerber.

General Mills also cites to a number of post-Gerber cases involving sugary cereals or ice cream. MTD at 19.[7] In none of these cases did the defendants claim that their products were made with real fruit. As such, they are distinguishable. In Videtto, which involved the cereal "Froot Loops," the court found that "the fanciful use of a nonsensical word ['Froot'] cannot reasonably be interpreted to imply that the Product contains or is made from actual fruit." 2009 WL 1439086, at *3. In Werbel, the court found that no reasonable consumer could mistake "cereal balls with a rough, textured surface in hues of deep purple, teal, chartreuse green and bright red" for natural fruit and noted that the defendant did not represent that cereal was made with real fruit.

---

[7] Citing Videtto v. Kellogg USA, 2:08CV01324-MCEDAD, 2009 WL 1439086 (E.D. Cal. May 21, 2009); Werbel v. Pepsico, Inc., C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010); Carrea v. Dreyer's Grand Ice Cream, Inc., C 10-01044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011); Dvora v. Gen. Mills, Inc., CV 11-1074-GW PLAX, 2011 WL 1897349 (C.D. Cal. May 16, 2011)

13

2010 WL 2673860, at *3-4.  In Carrea, the court found that no reasonable consumer would be deceived into thinking that ice cream was wholesome or otherwise healthy by labels such as "original" or "classic."  2011 WL 159380, at *5.  Finally, in Dvora, the court found that no reasonable consumer would believe that the cereal at issue contained real fruit when "there are no pictures of any fruits on the packaging, and there is no statement that the cereal was made with actual fruit."  2011 WL 1897349, at *7.

Accordingly, the Court DENIES General Mills's motion to dismiss with respect to Lam's UCL, CLRA, and FAL claims.  These claims may proceed to the extent they are predicated on the statement "made with real fruit."

### D. Lam's Claims for Breach of Express and Implied Warranty

For the reasons set forth below, the Court finds that Lam has failed to state a claim for breach of express or implied warranty.

"Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  Cal. Comm. Code § 2313(1)(b).  To plead a cause of action for breach of express warranty, a plaintiff must "allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff['s] injury."  Williams v. Beechnut Nutrition Corp., 185 Cal. App. 3d 135, 142 (Cal. Ct. App. 1986).  A plaintiff may satisfy these requirements where she shows that the defendant "utilized the advertising media to urge the use and application of [the subject product] and expressly warranted to the general public including plaintiff herein, that said product was

14

effective, proper and safe for its intended use." Id. (internal quotation marks omitted).

As to implied warranties, the California Commercial Code provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale." Cal. Comm. Code § 2314(1). To be merchantable, a product must "[c]onform to the promises or affirmations made on the container or label and must be fit for the ordinary purposes for which such goods are used." Hauter v. Zogarts, 14 Cal. 3d 104, 117-18 (1975) (internal quotations and citations omitted).

Lam's claim for breach of express warranty is based on the allegation that General Mills warranted that its "Fruit Snacks were healthful and had particular healthful characteristics." FAC ¶ 74. Likewise, Lam's claim for breach of implied warranty is predicated on the allegation that the Fruit Snacks were "promoted, marketed, advertised, packaged, and labeled as healthful and having particular health characteristics." Id. ¶ 78. However, Lam fails to point to any affirmative statement, whether it be in General Mills's advertising or the Fruit Snacks' packaging, indicating that the Fruit Snacks are healthful. As set forth more fully above, the Fruit Snacks' packaging contains a number of statements concerning the Fruit Snacks' ingredients and flavoring. Lam does not challenge the truth of any of these statements. Nor does she allege that the Fruit Snacks are not proper or safe for consumption as food.

Accordingly, the Court DISMISSES Lam's claims for breach of express and implied warranty.

15

## V. CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part General Mills's motion to dismiss Lam's FAC. Specifically:

- The FAC is DISMISSED WITH LEAVE TO AMEND to the extent that it is predicated on unidentified General Mills products.
- The FAC is DISMISSED WITH PREJUDICE to the extent that it is predicated on statements that the Fruit Snacks are "fruit flavored," "naturally flavored," and "gluten free."
- Lam's claims for breach of express and implied warranty are DISMISSED WITH PREJUDICE.
- Lam's claims remain undisturbed in all other respects.

Lam may amend her complaint within thirty (30) days of this Order.

IT IS SO ORDERED.

Dated: May 10, 2012  _____
UNITED STATES DISTRICT JUDGE